Harold Olson, Appellant *v.* Borough of Homestead, Appellee.

Argued October 7, 1981, before Judges MENCER, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Dennis Paul Zawacki,* with him *Ronald P. Koerner, Gatz, Cohen, Segal and Koerner,* for appellant.

*Arnold M. Epstein, Weisman, Pass and Swartz,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., April 14, 1982:

In September 1975 the Borough of Homestead, Allegheny County, dismissed Harold G. Olson from its police force, following his conviction of certain offenses. More than 2 years after his removal, Olson petitioned the Court of Common Pleas of Allegheny County to order his reinstatement to the Borough police force and to award him back pay. The basis of that petition was the fact that, subsequent to Olson's

removal from the police force, the judgments of conviction in the criminal case were arrested, and his criminal record was ordered expunged. When the lower court denied the relief sought by Olson, he filed the instant appeal.

As of early 1975 Harold G. Olson held the rank of sergeant on the Borough police force, and had served on the force for about 17 years. In March of 1975, he was arrested on charges of indecently assaulting his 13 year-old stepdaughter and corrupting her morals. Following Olson's arraignment on those charges, he was suspended from the police force by the Borough mayor, effective March 21, 1975.

On September 8, 1975, Olson was found guilty of the criminal charges by Judge GEORGE Ross, of the Court of Common Pleas of Allegheny County, sitting without a jury. In the trial the sole evidence of Olson's guilt was the testimony of the stepdaughter. Olson was sentenced to an 8 month term of probation;[1] upon being sentenced he filed an appeal.

On September 16, 1975, the Borough council held a meeting, attended by Olson, to consider his status as a police officer in light of the criminal conviction. Olson requested the council to postpone taking any action until after his criminal appeal had been decided. That request, however, was denied. The council voted to remove Olson from the police force: on the grounds that he had committed a violation of law constituting a misdeameanor or felony; had engaged in immorality; and had engaged in conduct unbecoming an officer. Each of those grounds is a statutory basis for removal, under Section 1190 of The Borough Code.[2] To support

---

[1] More specifically, Olson was sentenced to probation on the indecent assualt charge; as to the other charge, sentence was suspended.

[2] Act of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. §46190.

the removal of Olson on those grounds, the only evidence presented to the council was a certified copy of the record of conviction.[3]

Upon being notified of the council's decision, Olson demanded a hearing before the Borough's Civil Service Commission, which proceeded to hear the matter on September 23, 1975. At the Commission hearing, Olson gave no testimony that bore upon the substantive grounds for his removal from the police force; indeed, Olson did not testify at all. Instead, Olson's efforts before the Commission, through his attorney, were devoted exclusively to contesting the procedural regularity of the council meeting that resulted in the officer's discharge. Before the Commission, the only evidence relative to the grounds for Olson's removal from the police force was the certified copy of the record of the criminal conviction. On November 10, 1975, the Commission notified Olson that it had affirmed his removal from the Borough police force.

Under Section 1191 of The Borough Code,[4] Olson had 60 days from the date of the Civil Service Commission's order to appeal to the Court of Common Pleas. Section 1191 provides in pertinent part as follows:

All parties concerned have immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper. . . . *Such appeal shall be taken within sixty days from the date of entry by the commission of its final order and shall be by petition.* (Emphasis added.)

Olson did not file such an appeal within the prescribed time limit. However, on March 31, 1976, almost 5 months after the Commission's decision, he petitioned

---

[3] As to the conclusive effect of a criminal conviction on a subsequent civil proceeding involving the same facts, see *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965).

[4] 53 P.S. §46191.

the court for leave to appeal *nunc pro tunc*. That petition was denied, by an order of the court dated April 12, 1976. No appeal was taken from the denial.

In September of 1976, Olson's stepdaughter declared that she had fabricated the criminal accusation against him; and she renounced the testimony that had produced his conviction. In light of that development, Olson petitioned the Court of Common Pleas of Allegheny County for post-conviction relief. Based on the stepdaughter's recantation, Judge Ross, who had convicted Olson of the criminal charges, granted a motion in arrest of judgment and ordered Olson's criminal record expunged.[5] The hearing on the post conviction petition was held in June 1977; and the order granting relief in that regard was entered on September 26, 1977.

In the wake of having the criminal conviction set aside, Olson returned to the matter of his removal from the Borough police force. In late 1977 he filed with the court a pleading denominated "Petition For Reconsideration Upon Newly Discovered Evidence." By this pleading Olson requested the court to reconsider *its order of April 12, 1976,* which denied him leave to appeal *nunc pro tunc* from the decision of the Civil Service Commission affirming his removal. Even more, the pleading urged the court to allow a late appeal and, based on such an appeal, to reinstate Olson to the police force with back pay from the date of his removal. This claim for relief was based exclusively on the fact that the judgments of criminal conviction had been arrested.

Proceedings on Olson's "Petition for Reconsideration" were conducted by Judge MARION K. FINKEL-

---

[5] The record in this case does not indicate the relationship between the appeal Olson filed on being sentenced, and the post-conviction petition.

HOR. At the initial hearing on the matter, Olson's counsel stated that his purpose was to revive the right to appeal from the 1975 decision of the Civil Service Commission, obtain a trial de novo in that respect, and introduce at trial the fact that the criminal conviction had been set aside. Judge FINKELHOR, however, was of the view that an appeal *nunc pro tunc* was not legally permissible, and concluded that Olson's case was not in a proper procedural posture. The court took the position that Olson's claim for relief had to be first directed to the primary jurisdiction of the Civil Service Commission. More specifically, the court ruled, or instructed, that Olson should first request the Commission to "reconsider" his removal in light of the reversal of the criminal conviction; and that if the Commission refused to "reconsider," an appeal from that refusal would lie to the Court of Common Pleas.

Notwithstanding the above reasoning, the court did not dismiss Olson's "Petition For Reconsideration." Instead, the court entered an order, dated July 20, 1978, directing that the matter be continued, to allow the Commission 60 days to decide whether or not it would *"reconsider" its 1975 decision.* When the Commission opted not to reconsider Olson's removal, Judge FINKELHOR granted him a hearing *de novo.*

The court's order granting Olson a hearing *de novo* was dated November 20, 1979; and read in pertinent part as follows:

[U]pon the petition of Harold Olson for reconsideration of its Order for leave to appeal nunc pro tunc and for review of the denial of his request for reconsideration of his dismissal by the Civil Service Commission . . . the petition is granted to review the record of these proceedings and such additional evidence as the parties wish to present.

Although the above order is somewhat ambiguous, the written opinion that accompanied it stated that the court's purpose, in granting the hearing *de novo,* was to address the Civil Service Commission's denial of reconsideration.

After the hearing *de novo,* which was held on December 19, 1979, Judge FINKELHOR affirmed the Commission's decision not to reconsider Olson's removal. Accordingly, the court entered an order, dated April 30, 1980, denying the "Petition For Reconsideration." That order was followed by Olson's appeal to our Court.

It was the conclusion of the lower court that the arrest of judgment in the criminal case did not give Olson a legal right to the reinstatement he sought; and that, thus, the question of his reinstatement was within the discretion of the Commission. In so concluding, the lower court relied on the case of *Zeber Appeal,* 398 Pa. 35, 156 A.2d 821 (1959); and on our decision in *Kramer v. City of Bethlehem,* 5 Pa. Commonwealth Ct. 139, 289 A.2d 767 (1972). Those cases express the principle that a police officer can be validly removed for unbecoming conduct, even though he had been acquitted of criminal charges that grew out of the conduct or incident in question.

In our view, *Zeber Appeal* and *Kramer* are crucially different from the case at bar. In both *Zeber* and *Kramer* the discharge of the police officer was amply supported by evidence that was independent of the outcome of the criminal case. In the instant matter, Olson's removal was evidentially supported only by a judgment of criminal conviction that was subsequently set aside. Although the cases relied on by the lower court do not meet the central substantive issue raised by Olson, that is, the effect of the arrest of judgment on his removal, there remain other obstacles to the relief sought.

In the lower court proceedings here involved, Olson was not seeking a reinstatement effective as of some time after the arrest of judgment. Instead, as we have already observed, Olson's purpose was to gain a reinstatement that related back to the date of his 1975 dismissal, together with back pay for the entire intervening period.[6] Such was the purpose of his "Petition For Reconsideration"; and such remains his purpose in the instant appeal.

The lower court correctly ruled that Olson could not, as he sought to do, litigate his claim by means of a *nunc pro tunc* appeal from the 1975 decision of the Borough Civil Service Commission. It is well settled in our law that, where the legislature has fixed a time period within which an appeal may be filed, that period is mandatory and may not be extended as a matter of grace or indulgence. *E.g., West Penn Power Co. v. Goddard,* 460 Pa. 551, 333 A.2d 909 (1975); *Dixon Estate,* 443 Pa. 303, 279 A.2d 39 (1971). The timeliness of an appeal, and compliance with the statutory provisions that grant the right of appeal, go to the jurisdiction of the court to hear and decide the appeal. *E.g., Commonwealth v. Yorktowne Paper Mills, Inc.,* 419 Pa. 363, 214 A.2d 203 (1965); *Anthony Appeal,* 25 Pa. Commonwealth Ct. 41, 358 A.2d 874 (1976).

The only judicially recognized exception to the proscription against late appeals is where the lateness of an appeal has been caused by fraud or the equivalent of fraud; or has been caused by a breakdown in the operation of the court system. In Olson's renewed prayer for leave to appeal *nunc pro tunc,* from the original decision of the Civil Service Commission, he relied solely on the fact that the judgments of conviction in the criminal case had been arrested. That de-

---

[6] The record indicates that, after the filing of the "Petition For Reconsideration," Olson was offered reinstatement *without back pay;* and that he declined the offer.

velopment did not fall within any exception that would permit an extension of the 60 day appeal period mandated by Section 1191 of The Borough Code.

Olson's "Petition For Reconsideration" was submitted to the lower court to obtain leave for a late appeal under Section 1191 of The Borough Code. After ruling that such relief could not be granted, the court permitted or induced Olson to transform the matter into *a petition to have the Civil Service Commission reconsider its 1975 decision.* Putting aside the questionable propriety of that procedural transformation, it is our conclusion that the Commission's refusal to reconsider its original decision does not provide a basis for judicial relief in this case. The right to petition an administrative agency to reconsider its order or decision must be a right that is conferred by statute or regulation. *See Department of Environmental Resources v. Wolford,* 16 Pa. Commonwealth Ct. 254, 329 A.2d 304 (1974); *Robeson v. Philadelphia Tax Review Board,* 13 Pa. Commonwealth Ct. 513, 319 A.2d 201 (1974); P.L.E. Administrative Law and Procedure §52. This is especially true where a statutorily prescribed appeal period has expired. *Robeson.* In the instant case, we are directed to no authority that would permit Olson to petition the Borough Civil Service Commission to reconsider its unappealed-from original decision. No such authority is found in The Borough Code; nor even in the Local Agency Law.[7]

Whatever might be the substantive merits of Appellant Olson's claim for reinstatement and back pay, the procedures he pursued in this case were not the proper means to litigate his claim.

For the reasons set forth in this opinion, the order of the lower court dismissing the Appellant's petition is affirmed.

---

[7] 2 Pa. C. S. §§551-55, 751-54.

## ORDER

AND Now, the 14th day of April, 1982, the order of the Court of Common Pleas of Allegheny County, dated April 30, 1980, at G.D. 76-8049, is affirmed.

Judge MACPHAIL dissents.

Judge PALLADINO did not participate in the decision in this case.