# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stone Neapolitan Pizzeria, Inc.       :
      :
      v.       :       No. 19 C.D. 2017
      :       Submitted: July 28, 2017
Pennsylvania Liquor Control Board,       :
      Appellant       :


BEFORE:       HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge
                     HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                 FILED: September 22, 2017

The Pennsylvania Liquor Control Board (Board) appeals from the December 9, 2016 and December 14, 2016 Orders of the Court of Common Pleas of Allegheny County (trial court) regarding the statutory appeal of Stone Neapolitan Pizzeria, Inc. (Licensee) from the Board's denial of Licensee's application to renew (Application) its Restaurant Liquor License No. R-12948 (License) for its premises located at 300 Liberty Avenue, Pittsburgh, Pennsylvania.[1] The issues for our review are whether the trial court: erred by not addressing whether Licensee's appeal from the Board's denial, which was untimely, qualified for *nunc pro tunc* relief; erred or abused its discretion in granting the renewal of Licensee's late-filed

---

[1] Licensee also has a Sunday sales permit and an amusement permit.

Application subject to the payment of Licensee's delinquent taxes without considering whether the untimely Application met the standard for *nunc pro tunc* relief; and erred when, after considering the merits of the appeal, it directed the Board to renew the License, subject to certain conditions related to Licensee paying its delinquent taxes and obtaining a tax clearance from the Department of Revenue (Revenue).[2]  Because the trial court did not make findings of fact or provide analysis on whether Licensee's untimely appeal met the requirements for *nunc pro tunc* relief, we vacate and remand for the trial court to address this issue and, if it concludes that such relief is warranted, it should address whether the untimely Application likewise meets the standard for *nunc pro tunc* relief before considering, if necessary, the merits of Licensee's appeal from the non-renewal of its License.

Licensee, through its owner and president, Richard Werner, Jr., acquired the License in 2012 for $70,000.  Werner, on behalf of Licensee, renewed the License several times without incident.  For the licensing period effective June 1, 2015, the Application should have been filed on or before April 2, 2015, to be timely per Section 470(a) of the Liquor Code (Code), 47 P.S. § 4-470(a).[3]  Werner filed the Application online on May 18, 2015.  The Application indicated that Licensee's tax status with Revenue was "not clear" and the reason the Application was late was because the "taxes are not up to date and [Licensee] needed time to get things in order before filing for renewal."  (R.R. at 4a-5a.)  On the Application, Werner listed himself as Licensee and used his home address (Home Address) as requested

---

[2] Licensee is precluded from participating in this appeal due to its failure to file a brief.

[3] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-470(a) (requiring, *inter alia*, that a renewal application be filed at least 60 days before the expiration date of the license).

2

on the Application.[4]   The Application included Licensee's name and address (Business Address) next to a list of the license and permits being renewed.

By letter dated July 30, 2015 (Objection Letter), sent to the Home Address, the Bureau of Licensing (Bureau) expressed its objections to the renewal of the License because, *inter alia*, the Application was untimely and Licensee did not include verification, and the Board had not received notice from Revenue, that Licensee's state tax reports had been filed and all state taxes had been paid as required by Section 477(a) of the Code, 47 P.S. § 4-477(a).[5,6] (R.R. at 2a.)  The Objection Letter advised Licensee that a hearing on the objections would be scheduled and Licensee would be contacted to schedule that hearing.

A hearing was held before a hearing examiner on November 5, 2015, at which the Bureau appeared and no one for Licensee was present.  The Bureau introduced, *inter alia*, the Objection Letter, the completed Application, and a letter rescheduling the hearing from its initial date to November 5, 2015.  The Objection Letter and rescheduling letter were sent to the Home Address, and all of the documents were admitted into the record.  When asked whether the Bureau's counsel had any contact with Licensee, counsel indicated "it's unclear to me whether there was any direct contact" via the Bureau's hearing scheduler.  (*Id.* at 10a.)

---

[4] The Application requested the "name and address of the owner of the premises," and the "home address" of the signatories of the Application, here, Werner as "Licensee" and "President" of Licensee.  (R.R. at 76a-77a.)

[5] Section 477 was added by Section 77 of the Act of June 29, 1987, P.L. 32, *as amended*.

[6] The Bureau also objected because Werner did not pay the required late fee.  Werner paid application fees of $1,140.00 and a late fee of $100.00, but the Bureau contends that the fee for filing a late application is $150.  (R.R. at 2a.)

3

Based on the evidence presented, the hearing examiner recommended that the Application be denied because Licensee did not "comply with the[] basic requirements for the renewal of a liquor license" by obtaining the tax clearance required by Section 477 of the Code. (*Id.* at 15a.) The hearing examiner explained that Section 477(d)(2)-(3) states that "[t]he Board shall not approve any application for . . . renewal . . . of any license . . . where the applicant" has not filed all of its state tax reports or paid the state taxes "subject to a timely . . . appeal or . . . a duly authorized deferred payment plan." (*Id.* (quoting 47 P.S. § 4-477(d)(2), (3)).) He also noted that the Application was untimely and the proper late filing fee was not submitted.

After its review of the record and the hearing examiner's recommendation, the Board denied the Application by Order dated January 13, 2016. On the same day, the Board sent this Order to the Home Address with a letter informing Licensee of its refusal to renew the License and that Licensee could appeal (Refusal Letter). The Board subsequently issued an opinion explaining its rationale for refusing to renew the License. It concluded that Licensee's lack of tax clearance precluded it from granting the renewal under Sections 470 and 477, the Application was untimely filed without good cause, and Licensee did not remit the late fee. (Board Op. at 6-9.)

Licensee filed an appeal with the trial court on February 16, 2016, requesting supersedeas under Section 464 of the Code,[7] 47 P.S. § 4-464, and asserting that it was unaware of the November 5, 2015 hearing and the Board's

---

[7] Section 464 sets forth, *inter alia*, the provisions for hearings on license renewal applications, requires that appeals from these determinations be filed within 20 days from the date of grant or refusal, and states the "appeal shall act as a supersedeas unless upon sufficient cause shown the court shall determine otherwise." 47 P.S. § 4-464.

refusal to renew the License was arbitrary, capricious, not supported by competent evidence, and contrary to law. (R.R. at 23a-24a.) The trial court issued a writ of certiorari on February 17, 2016, to the Board directing it to file the certified record on the matter within 20 days. The Board, on February 23, 2016, filed a Motion to Dismiss Appeal and to Quash Supersedeas (Motion to Dismiss), asserting, *inter alia*, Licensee's appeal was untimely because it was filed more than 20 days after the January 13, 2016 Order and the supersedeas procedures of Section 464 do not apply because Section 477(f) of the Code[8] prohibits the grant of supersedeas under these circumstances. Licensee responded that its appeal should be accepted *nunc pro tunc* because it did not receive the January 13, 2016 Order and did not learn of the denial of the Application until February 11, 2016. As for the request to quash the supersedeas, Licensee contended that it was attempting to use the License as collateral to obtain a loan to pay its taxes, it was willing to pay any fees associated with the Application, and it was unaware that the late filing fee was required to be paid with the Application.

The trial court held a *de novo* hearing on June 27, 2016. The Board renewed its Motion to Dismiss based on the untimeliness of Licensee's appeal. It also presented the documentary evidence the Bureau offered at the November 5, 2015 hearing, as well as the recommended opinion by the hearing examiner, and the Board's January 13, 2016 Order and accompanying Refusal Letter.[9] (R.R. at 2a-20a.)

---

[8] Section 477(f) states, in relevant part, that "upon renewal . . . of any license, if . . . Revenue . . . notifies the board of noncompliance with the aforementioned provisions, the board shall not renew, issue, transfer or validate the license. Any appeal filed therefrom shall not act as a supersedeas." 47 P.S. § 4-477(f).

[9] The Board also introduced documents that indicated that the hearing notices were sent by certified mail to Werner and Licensee at the Business Address and that attempts were made to **(Footnote continued on next page…)**

Werner testified on Licensee's behalf as follows. He is the sole owner, president, and shareholder of Licensee, and he did not receive notice of the November 5, 2015 hearing or the Board's January 13, 2016 Order. Prior to the Objection Letter, all the mail Licensee received from the Board was sent to the Business Address, and Werner expected that correspondence would continue to be sent to that address.[10] He used the Home Address on the Application only because it was the billing address for the debit card used to pay the application fees. Werner does all of his business online, all of his financial statements and bills are received and paid online, and he uses the Home Address, which is his father's address, as his mailing address and on his driver's license. However, no one actually resides there, he does not go there to retrieve his mail, and his father does not deliver Werner's mail to him. Werner learned of the Board's Order while obtaining a loan to pay Licensee's outstanding taxes and immediately began the process of appealing. On the merits, Licensee owes about $25,000 in sales tax. Werner acknowledged Licensee's employees collected the sales tax from customers and admitted that the non-payment "f[e]ll[] on [him]" because he "filed but didn't send it in." (R.R. at 117a.) Werner had secured a loan, using the

---

(continued…)

contact Werner about the hearings by phone but that no phone calls were returned. (Bd. Ex. 6.) Licensee objected to these documents as hearsay, but the trial court "let it in, but . . . d[i]dn't know what weight [it was] going to give [them]." (R.R. at 129a-32a.) There were no signed return receipts accompanying these documents. (*Id.* at 135a-36a.)

[10] For example, Licensee introduced a supplemental order by the Board's Office of Administrative Law Judge, mailed to the Business Address, which: stated that a fine associated with a citation due to be paid by Licensee by June 21, 2015, remained unpaid as of July 2, 2015; noted that the License had expired on May 31, 2015, and had not been renewed; and ordered that the License and permits "be suspended indefinitely for at least one day until the fine . . . has been paid . . . pending the reactivation of the Licensee's [L]icense." (Licensee's Ex. B1.) Werner testified at the hearing that this fine had been paid. (R.R. at 110a.)

6

License as collateral, to pay the taxes, but could not close on the loan because the License had not been renewed.  As of the date of the *de novo* hearing, the taxes remained unpaid.

The trial court issued a Memorandum Order on December 9, 2016, in which it recognized that "Werner has not made himself readily available and seems to rely on the internet exclusively for communication" and for "all of his financial transactions." (Memorandum Order 1-2.)  The trial court noted that while Werner gave the Home Address, at which neither he nor his father lived, there was the Business Address, where mail was also received.[11] (*Id.* at 2.)  The trial court found that Licensee was in a "proverbial 'Catch 22'" situation whereby it could obtain a loan using the "[L]icense as collateral but the collateral was flawed because it had not been renewed and thus the loan would not be granted." (*Id.*)  Concluding that Licensee's problem was the "inability to borrow money to pay delinquent taxes to other Commonwealth Agencies," the operation of the restaurant "has not been problematic," and it would be inequitable for Licensee to lose its $70,000 investment, the trial court directed the following:

1. [The Board] is to renew the [L]icense on a provisional basis subject to [Licensee's] paying the delinquent taxes due.

2. Within 60 days, [Licensee] shall secure the Funds, by loan or otherwise to pay the aforesaid delinquent amounts.

---

[11] According to the trial court, Werner did not renew the License "allegedly because he did not receive notification of the impending expiration." (Memorandum Order at 2.)  There was no allegation that Licensee did not receive notification that it was time to renew the License. The trial court also stated that Licensee's "appeal was DENIED," (*id.*), but the hearing on the Application and the Board's January 13, 2016 Order did not involve an appeal.

3. On making such payments, Licenses[12] will be renewed.

(*Id.* at 2-3.) On December 14, 2016, the trial court issued a Supplemental Memorandum Order, adding that Licensee "shall pay a civil penalty of $2,500 so as to defray such expense as the Board has incurred and to impress upon [Licensee] the necessity to follow the rules." (Supplemental Memorandum Order at 2.) The Board now appeals to this Court.[13]

The Board contends that the trial court erred when it addressed the merits of Licensee's appeal without first determining whether Licensee established that it was entitled to *nunc pro tunc* relief for its untimely appeal and without ruling on the Board's Motion to Dismiss. It asserts that the trial court's decision here is substantively similar to its decisions in *J.V. Lounge, Inc. v. Pennsylvania Liquor Control Board*, 131 A.3d 517 (Pa. Cmwlth. 2015) and *Arena Beverage Corporation v. Pennsylvania Liquor Control Board*, 97 A.3d 444 (Pa. Cmwlth. 2014). In those cases, which also involved the Board's denial of license renewals for not providing the required tax clearances, this Court either vacated or reversed the trial court's orders granting the licensees' appeals because it did not properly apply the *nunc pro tunc* standard to the untimely appeals, and this Court reinstated the Board's denials. The Board asserts the result should be the same here.

It is undisputed that Licensee's appeal to the trial court was filed beyond the 20-day appeal period set forth in Section 464 of the Code. 47 P.S. § 4-464.

---

[12] The use of "Licenses" includes Licensee's Sunday sales and amusement permits.

[13] Our review of a trial court's decision to allow an untimely appeal *nunc pro tunc* "is limited to determining whether the trial court abused its discretion or committed an error of law." *J.V. Lounge, Inc. v. Pa. Liquor Control Bd.*, 131 A.3d 517, 521 n.7 (Pa. Cmwlth. 2015) (quoting *Puckett v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 140, 143 n.6 (Pa. Cmwlth. 2002)).

"Where the legislature has fixed a time period within which an appeal may be filed, that period is mandatory and may not be extended as a matter of grace or indulgence." *Arena Beverage Corp.*, 97 A.3d at 448 (quoting *Olson v. Borough of Homestead*, 443 A.2d 875, 878 (Pa. Cmwlth. 1982)) (emphasis omitted). "[T]he timeliness of an appeal goes to the jurisdiction of the [court] appealed to and its competency to act." *Id.* (quoting *Coshey v. Beal*, 366 A.2d 1295, 1297 (Pa. Cmwlth. 1976)). An appeal *nunc pro tunc* is an exception to this general rule, and it "may be allowed where the delay in filing . . . was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant, his or her counsel or a third party." *H.D. v. Dep't of Pub. Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000) (citing *Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130, 1131 (Pa. 1996)). The party seeking *nunc pro tunc* relief must also establish that: (1) the *nunc pro tunc* request "was filed within a short time after learning of and having an opportunity to address the untimeliness" of the matter; (2) "the elapsed time period is of very short duration"; and, (3) the other party "will not be prejudiced by the delay." *Id.* (citing *J.C. v. Dep't of Pub. Welfare*, 720 A.2d 193, 197 (Pa. Cmwlth. 1998)). The party seeking *nunc pro tunc* relief carries "a heavy burden to justify an untimely appeal." *Blast Intermediate Unit No. 17 v. Unemployment Comp. Bd. of Review*, 645 A.2d 447, 449 (Pa. Cmwlth. 1994). Before considering the substantive issues of an appeal, "the trial court [is] **required** to first address" whether the untimely appeal satisfies either of these standards. *Arena Beverage Corp.*, 97 A.3d at 449 (emphasis in original).

As in *J.V. Lounge, Inc.* and *Arena Beverage Corporation*, the trial court here did not make findings of fact or provide an analysis on whether Licensee met the

9

standard for *nunc pro tunc* relief for its untimely appeal. It likewise did not resolve the outstanding Motion to Dismiss based on that untimeliness. Rather, "without applying or evaluating whether the record evidence supported *nunc pro tunc* relief, the trial court considered the substantive issues and then assumed jurisdiction based upon its perceived unfairness of the Board's decision." *Arena Beverage Corp.*, 97 A.3d at 449. Notwithstanding the trial court's lack of analysis in those cases, this Court considered whether *nunc pro tunc* relief would have been appropriate under those circumstances and concluded it would not. We will not do the same here because, unlike the licensees in *J.V. Lounge, Inc.* and *Arena Beverage Corporation*, Licensee here provides a plausible basis, if credited and supported by factual findings based on the record, that could warrant the grant of *nunc pro tunc* relief on the basis of an administrative breakdown.[14] Accordingly, we will vacate the trial court's Orders and remand for the trial court to make findings of fact and a determination on whether Licensee meets the standard for *nunc pro tunc* relief for its untimely appeal.

The Board also argues the trial court erred in reversing the Board's Order because the Application was untimely and Licensee did not establish reasonable cause for why the Application should have been accepted *nunc pro tunc* pursuant to *Cook*. Section 470(a) provides that renewal applications "shall be filed . . . at least sixty days before the expiration date of [the license]." 47 P.S. § 4-470(a). This section also "[p]rovide[s], however, [t]hat the [B]oard, in its discretion, may

---

[14] The crux of Licensee's position was that there was a breakdown in the administrative process when the Board used the Home Address to send, among other things, the January 13, 2016 Order, rather than the Business Address, where **all** other communications to Licensee have been sent. Notably, the Application provides no place for a licensee to designate which address, the licensed premises, the licensee's home address, or some other address, the licensee wants any correspondence from the Board to be sent.

accept *nunc pro tunc* a renewal application filed less than sixty days before the expiration date of the license with the required fees, **upon reasonable cause shown** . . . ." *Id.* (emphasis added). This issue also was left unresolved by the trial court, and, on remand, if the trial court concludes Licensee's appeal should be accepted *nunc pro tunc*, the trial court should determine whether the reason proffered by Licensee for the untimely Application satisfies this standard for *nunc pro tunc* relief.[15]

Because the trial court did not make findings of fact or analyze whether Licensee's untimely appeal met the requirements for being accepted *nunc pro tunc*, we vacate and remand for the trial court to issue a new opinion and order addressing that issue. If it concludes that *nunc pro tunc* relief is warranted for the appeal, it must address whether the untimely Application may be accepted *nunc pro tunc*, before considering, if necessary, the merits of Licensee's appeal from the non-renewal of its License.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[15] The Board also argues, on the merits, that the trial court was precluded by Sections 470 and 477 of the Code from ordering the renewal of the License due to the lack of tax clearance and non-payment of state taxes. These sections, according to the Board, mandate that such applications must be denied. 47 P.S. §§ 4-470, 4-477(d). However, we will not address the merits of this issue before the trial court has an opportunity to address the threshold issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stone Neapolitan Pizzeria, Inc.        :
                                             :

        v.                 :    No. 19 C.D. 2017

                                               :

Pennsylvania Liquor Control Board,    :
                        Appellant    :

# O R D E R

**NOW**, September 22, 2017, the December 9, 2016 and December 14, 2016 Orders of the Court of Common Pleas of Allegheny County (trial court), entered in the above-captioned matter, are **VACATED** and the matter is **REMANDED** for the trial court to issue a new opinion and order in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge