# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,     :
                Appellant     :
           v.            :    No. 104 C.D. 2018
                              :    Submitted:  November 2, 2018
Stone Neapolitan Pizzeria, Inc.       :
                              :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. MCCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: February 13, 2019**

The appeal before us is from the December 15, 2017 Order of the Court of Common Pleas of Allegheny County (common pleas) issued following this Court's remand in *Stone Neapolitan Pizzeria, Inc. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth., No. 19 C.D. 2017, filed September 22, 2017) (*Stone Neapolitan I*). In *Stone Neapolitan I,* we vacated common pleas' prior orders resolving the statutory appeal of Stone Neapolitan Pizzeria, Inc. (Licensee) from the Pennsylvania Liquor Control Board's (Board) denial of Licensee's application to renew (Application) its Restaurant Liquor License No. R-12948[1] (License) for its premises located at 300 Liberty Avenue, Pittsburgh, Pennsylvania.  We remanded

---

[1] Licensee also has a Sunday sales permit and an amusement permit.

for common pleas to address "whether Licensee's untimely appeal" and "untimely Application may be accepted *nunc pro tunc*," and, "if necessary, the merits of Licensee's appeal from the non-renewal of its License." *Stone Neapolitan I*, slip op. at 11.

In its remand opinion and Order, common pleas accepted Licensee's untimely appeal and untimely Application *nunc pro tunc*, reiterated its decision granting Licensee's statutory appeal, and directed the Board, as it had before, to renew the License subject to certain conditions related to Licensee's paying its delinquent taxes and obtaining a tax clearance from the Department of Revenue (Revenue). On appeal, the Board argues[2] common pleas: (1) abused its discretion by accepting the untimely appeal and untimely Application *nunc pro tunc* where the circumstances did not meet the standard for granting such relief; and (2) erred by granting the appeal and directing the Board to renew the License, where Licensee has not established its payment of State sales taxes to Revenue. We have recently held that Sections 470 and 477 of the Liquor Code (Code), 47 P.S. §§ 4-470, 4-477,[3] preclude renewal where a licensee has not paid its State sales taxes; therefore, common pleas could not direct the Board to renew the License. Accordingly, we reverse.

## I. Background

### A. *The Application and the Board's Denial*

The facts have been previously set forth in *Stone Neapolitan I*, slip op. 2-8. Briefly, Licensee, through its owner and president, Richard Werner, Jr., acquired

---

[2] Licensee is precluded from participating in this appeal due to its failure to file a brief.

[3] Act of April 12, 1951, P.L. 90, *as amended*. Section 477 was added by Section 77 of the Act of June 29, 1987, P.L. 32.

the License in 2012 for $70,000.  Werner filed the Application for the licensing period effective June 1, 2015, online on May 18, 2015, when it should have been filed on or before April 2, 2015, to be timely per Section 470(a) of the Code (requiring that a renewal application be filed at least 60 days before the expiration date of the license).  The Application indicated that Licensee's tax status with Revenue was "not clear" and the reason the Application was late was because the "taxes are not up to date and [Licensee] needed time to get things in order before filing for renewal."  (Reproduced Record (R.R.) at 4a-5a.)  On the Application, Werner listed himself as Licensee and used his home address (Home Address) as requested on the Application.[4]  The Application included Licensee's name and address (Business Address) next to a list of the license and permits being renewed.

The Bureau of Licensing (Bureau), by letter dated July 30, 2015 (Objection Letter), sent to the Home Address, objected to the renewal of the License because: the Application was untimely; and Licensee did not include verification, and the Board had not received notice from Revenue, that Licensee's State tax reports had been filed and all State taxes had been paid as required by Section 477(a) of the Code.[5]  (R.R. at 2a.)  The Objection Letter advised Licensee that a hearing on the objections would be scheduled and Licensee would be contacted to schedule that hearing.

---

[4] The Application requested the "name and address of the owner of the premises," and the "home address" of the signatories of the Application, here, Werner as "Licensee" and "President" of Licensee.  (R.R. at 4a-5a.)

[5] The Bureau also objected because Werner did not pay the required late fee.  Werner paid application fees of $1,140.00 and a late fee of $100.00, but the Bureau contended that the fee for filing a late application is $150.  (R.R. at 2a.)  Although the Board reiterates this as a reason we should reverse, we need not address it because of our disposition.

At the hearing on November 5, 2015, the Bureau appeared but no one for Licensee was present. The Bureau introduced, *inter alia*, the Objection Letter, and a letter rescheduling the hearing from its initial date to November 5, 2015, which had been sent to the Home Address, and the completed Application, all of which were admitted into the record. When asked whether the Bureau's counsel had any contact with Licensee, counsel indicated "it's unclear to me whether there was any direct contact" via the Bureau's hearing scheduler. (*Id.* at 10a.) The hearing examiner recommended that the Application be denied because Licensee did not "comply with the[] basic requirements for the renewal of a liquor license" by obtaining the tax clearance required by Section 477(d)(2)-(3) of the Code. (*Id.* at 15a ("[t]he [B]oard shall not approve any application for . . . renewal . . . of any license . . . where the applicant" has not filed all of its State tax reports or paid the State taxes "not subject to a timely . . . appeal or . . . a duly authorized deferred payment plan," 47 P.S. § 4-477(d)(2), (3)).)

After review, the Board denied the Application by order dated January 13, 2016 (January 13, 2016 Order), which it sent to the Home Address with a letter informing Licensee of its refusal to renew the License and that Licensee could appeal (Refusal Letter).

### B. *Licensee's First Appeal to Common Pleas*

Licensee filed an appeal with common pleas on February 16, 2016, asserting it was unaware of the November 5, 2015 hearing and the Board's refusal to renew the License was arbitrary, capricious, not supported by competent evidence, and contrary to law. (R.R. at 23a.) The Board requested the dismissal of the appeal (Motion to Dismiss) because it was untimely filed more than 20 days after the January 13, 2016 Order. Licensee responded that its appeal should be accepted

4

*nunc pro tunc* because it did not receive the January 13, 2016 Order and did not learn of the denial of the Application until February 11, 2016. Common pleas held a *de novo* hearing on June 27, 2016.

Werner testified on Licensee's behalf that he did not receive notice of the November 5, 2015 hearing or the Board's January 13, 2016 Order. Prior to the Objection Letter, all the mail Licensee received from the Board, including notices to renew the License, was sent to the Business Address, and Werner expected that correspondence would continue to be sent to that address.[6] He used the Home Address on the Application only because it was the billing address for the debit card used to pay the application fees. Werner does all of his business online, all of his financial statements and bills are received and paid online, and he uses the Home Address, which is his father's address, as his mailing address and on his driver's license. However, no one actually resides there, he does not go there to retrieve his mail, and his father does not deliver Werner's mail to him. Werner learned of the Board's Order while obtaining a loan to pay Licensee's outstanding taxes and immediately began the process of appealing.

On the merits, Werner testified that the renewal application was sent to and received at the Business Address, and he was aware that the renewal was due in April 2015. (R.R. at 107a, 116a, 137a-38a.) He did not timely file the Application because he was trying to obtain a loan to pay the approximately $25,000 in State sales taxes Werner acknowledged Licensee owed to Revenue. (*Id.* at 117a, 120a, 125a.) Werner testified Licensee's employees collected the sales tax from

---

[6] For example, Licensee introduced a supplemental order by the Board's Office of Administrative Law Judge, mailed to the Business Address, related to a citation and associated unpaid fine. (Licensee's Ex. B1.) Werner testified at the hearing that this fine had been paid. (R.R. at 110a.)

customers and admitted that the non-payment "f[e]ll[] on [him]" because he "filed but didn't send it in." (*Id.* at 117a.) Werner had secured a loan, using the License as collateral, to pay the taxes, but could not close on the loan because the License had not been renewed. As of the date of the *de novo* hearing, the taxes remained unpaid.

Common pleas issued a Memorandum Order on December 9, 2016, finding that Licensee was in a "proverbial 'Catch 22'" situation whereby it could obtain a loan using the "[L]icense as collateral but the collateral was flawed because it had not been renewed and thus the loan would not be granted." (Memorandum Order at 2.) Concluding that Licensee's problem was the "inability to borrow money to pay delinquent sums to other Commonwealth Agencies," the operation of the restaurant "has not been problematic," and it would be inequitable for Licensee to lose its $70,000 investment, common pleas directed the following:

1.  [The Board] is to renew the [L]icense on a provisional basis subject to [Licensee's] paying the delinquent taxes due.

2.  Within 60 days, [Licensee] shall secure the Funds, by loan or otherwise to pay the aforesaid delinquent amounts.

3.  On making such payments, Licenses[7] will be renewed.

(*Id.* at 2-3.) Common pleas issued a Supplemental Memorandum Order, adding that Licensee "shall pay a civil penalty of $2,500 so as to defray such expense as the Board has incurred and to impress upon [Licensee] the necessity to follow the rules." (Supplemental Memorandum Order at 2.)

---

[7] The use of "Licenses" includes Licensee's Sunday sales and amusement permits.

## C.    *The Board's First Appeal to this Court*

The Board appealed to this Court, arguing that common pleas erred by addressing the merits of Licensee's appeal without first determining whether Licensee established that it was entitled to *nunc pro tunc* relief for its untimely appeal and untimely Application. We agreed, observing that common pleas had not made "findings of fact or analyze[d] whether Licensee's untimely appeal met the requirements for being accepted *nunc pro tunc*" or addressed "whether the untimely Application may be accepted *nunc pro tunc*." *Stone Neapolitan I*, slip op. at 11. However, we declined the Board's request that we reverse common pleas' orders, as we had under similar circumstances in *J.V. Lounge, Inc. v. Pennsylvania Liquor Control Board*, 131 A.3d 517 (Pa. Cmwlth. 2015), and *Arena Beverage Corp. v. Pennsylvania Liquor Control Board*, 97 A.3d 444 (Pa. Cmwlth. 2014). We explained that, unlike in those cases, Licensee had "provide[d] a plausible basis, if credited and supported by factual findings based on the record, that could warrant the grant of *nunc pro tunc* relief on the basis of an administrative breakdown." *Stone Neapolitan I*, slip op. at 10. "The crux of Licensee's position," we noted, "was that there was a breakdown in the administrative process when the Board used the Home Address to send, among other things, the January 13, 2016 Order, rather than the Business Address, where all other communications to Licensee ha[d] been sent." *Id.* at 10 n.14 (emphasis omitted). Accordingly, we vacated common pleas' orders and remanded for it to issue a new opinion and order addressing those issues and, if *nunc pro tunc* relief was granted, to address the merits of Licensee's appeal.

### D. Common Pleas' Remand Opinion and Order

Common pleas issued its remand opinion and order on December 15, 2017, in which it articulated reasons for granting Licensee *nunc pro tunc* relief pursuant to *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996). After citing this Court's discussion on the plausibility of Licensee's basis for *nunc pro tunc* relief, common pleas found "that there really was a breakdown in the Board's administrative process" through its "inconsistent method[s] . . . to give notice" and that "Werner never did get proper notice of the need to renew [the L]icense" or of the January 13, 2016 Order. (Remand Op. at 2-3, 5.) Then, citing the remaining *Cook* factors for granting *nunc pro tunc* relief, requiring that the appeal be "'filed within a short time after learning of and having an opportunity to address the untimeliness' of the matter"; that "'the elapsed time period is of very short duration'"; and that "the other party 'will not be prejudiced by the delay,'" common pleas analyzed whether Licensee's appeal and Application met these requirements. (*Id.* at 3 (quoting *Cook*, 671 A.2d at 1131).) Common pleas held that they did, citing Werner's testimony regarding the filing of the February 16, 2016 appeal as soon as he learned of the Board's denial. (*Id.* at 4.) As for the Application, common pleas found that: "Werner did his best to renew once he learned that he needed to;" the Board is authorized to, and does, accept untimely applications, with the filing of a late fee; the delay between the deadline for the Application and the date it was actually filed was not excessive; and no one was prejudiced by the delay. (*Id.* at 4-5.) Accordingly, common pleas found that Licensee "ha[d] satisfied the *nunc pro tunc* standards and . . . [it] should hear" the appeal. (*Id.* at 5.)

8

On the merits of that appeal and the question of the unpaid sales tax, common pleas posited that "[m]aybe Werner has paid it since the issue arose and it is now moot" but that, if not, he remained "in the 'Catch 22' status." (*Id.*) It was because of this status, common pleas explained, that it had "devised the provisional status, so that the [L]icense can be renewed subject to [Licensee] paying the delinquent sales tax." (*Id.*) Common pleas maintained that this "device is appropriate under [its] powers as the trier of fact in a *de novo* proceeding" and its "$2,500 penalty is appropriate as a learning tool for Werner." (*Id.* at 6.) Accordingly, it issued the December 15, 2017 Order reiterating the relief set forth in its prior orders. (*Id.*) The Board again appeals.[8]

## II. The Board's Current Appeal

### A.  Nunc Pro Tunc Relief

#### 1. Licensee's Appeal to Common Pleas

The Board contends common pleas abused its discretion when it accepted Licensee's appeal *nunc pro tunc* without actually analyzing whether extraordinary circumstances, as required by *Cook*, caused the untimeliness of the appeal. It asserts that common pleas erred in concluding that the mailing of the January 13, 2016 Order and accompanying Refusal Letter to the Home Address was a

---

[8] Our review of a decision to allow an untimely appeal *nunc pro tunc* "is limited to determining whether [common pleas] abused its discretion or committed an error of law." *J.V. Lounge, Inc.*, 131 A.3d at 521 n.7 (internal quotation marks and citation omitted). Our review of the grant or denial of liquor license renewal "is limited to determining whether [common pleas'] findings are supported by substantial evidence and whether [common pleas] committed an error of law or an abuse of discretion." *Whalla v. Pa. Liquor Control Bd.*, 176 A.3d 1080, 1085 n.5 (Pa. Cmwlth. 2018).

breakdown in the Board's administrative process because Werner provided that address to the Board on the Application. We disagree.

It is undisputed that Licensee's appeal to the trial court was filed beyond the 20-day appeal period set forth in Section 464 of the Code. 47 P.S. § 4-464. "Where the legislature has fixed a time period within which an appeal may be filed, that period is mandatory and may not be extended as a matter of grace or indulgence." *Arena Beverage Corp.*, 97 A.3d at 448 (quoting *Olson v. Borough of Homestead*, 443 A.2d 875, 878 (Pa. Cmwlth. 1982)) (emphasis omitted). "The timeliness of an appeal goes to the jurisdiction of the [court] and [to] its competency to act." *Id.* (citing *Coshey v. Beal*, 366 A.2d 1295, 1297 (Pa. Cmwlth. 1976)). An appeal *nunc pro tunc* is an exception to this general rule, and it may only be granted where "extraordinary circumstances involving fraud or its equivalent, duress, or coercion caused the delay in filing an appeal." *In re Appeal of Borough of Riegelsville from Bucks Cty. Bd. of Assessment & Revision of Taxes*, 979 A.2d 399, 402 (Pa. Cmwlth. 2009) (emphasis omitted). Such extraordinary circumstances may include a "breakdown in the court's [or administrative body's] operation." *Cook*, 671 A.2d at 1131 (quoting *Bass v. Bureau of Corr.*, 401 A.2d 1133, 1135 (Pa. 1979)). Alternatively, *nunc pro tunc* relief may be granted where the late filing was "a result of non-negligent circumstances, either as they relate to the appellant or the appellant's counsel;" the appeal was filed "shortly after the expiration date;" and there is no prejudice to the appellee. *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001); *see also Cook*, 671 A.2d at 1131. The party seeking *nunc pro tunc* relief carries a "heavy burden to justify an untimely appeal." *Blast Intermediate Unit No. 17 v. Unemployment Comp. Bd. of Review*, 645 A.2d 447, 449 (Pa. Cmwlth. 1994).

10

As we previously observed in *Stone Neapolitan I*, and found by common pleas on remand, the crux of Licensee's position was that there was a breakdown in the administrative process when the Board used the Home Address to send the January 13, 2016 Order and Refusal Letter, rather than the Business Address. Werner testified that prior to the Objection Letter and subsequent notices and Board orders related to these proceedings, **all communications** from the Board to Licensee had been sent **to the Business Address**. Werner indicated he believed any communications related to the License would continue to be mailed to the Business Address, as it always had been. Finally, Werner testified he did not receive anything mailed to the Home Address, including the January 13, 2016 Order and Refusal Letter. Common pleas accepted this testimony as credible and as supporting the conclusion that the Board's "inconsistent method" of giving notice to Licensee was a breakdown in the administrative process. (Remand Op. at 5.)

We agree there was a breakdown in the administrative process here. While the Board is correct that Werner listed the Home Address in the Application, the Application **also included the Business Address**. Prior to the current proceedings, all other mail from the Board to Licensee, including the current renewal notice, **had been mailed to, and received by, Licensee at the Business Address**. There was no reason for Werner to believe that, by providing the Home Address on the Application, this communications process would change.[9] Because Licensee did not receive notice of the January 13, 2016 Order and Refusal Letter

---

[9] A review of the Application reveals there is no place for a licensee to designate, if there are multiple addresses listed thereon, which address should be used for mailing purposes, which might have avoided the confusion here.

until after the appeal period had expired as a result of a breakdown in the Board's administrative process, we will not find that common pleas abused its discretion in accepting the appeal *nunc pro tunc*.

### 2. Licensee's Application

The Board also argues common pleas abused its discretion in finding that the untimely Application could be accepted *nunc pro tunc*. According to the Board, Licensee did not have reasonable cause for the Application's untimeliness, and, therefore, the Application could not be accepted *nunc pro tunc* pursuant to Section 470(a), 47 P.S. § 4-470(a) (providing "[t]hat the [B]oard, in its discretion, may accept *nunc pro tunc* a renewal application filed less than sixty days before the expiration date of the license . . . , **upon reasonable cause shown** . . . .") (emphasis added).

Although common pleas found that "Werner never did get proper notice of the need to renew [the L]icense," (Remand Op. at 5), Werner testified that the renewal notice was mailed to the Business Address and he was aware that the Application was due in April 2015, (R.R. at 107a, 116a). Thus, the reason found by common pleas for the Application's untimeliness is not supported by the record. Instead, the reason Licensee gave on the Application for the untimeliness was that the "taxes [were] not up to date and [Licensee] needed time to get things in order before filing for renewal." (*Id.* at 5a.) However, for reasons discussed below, it would not matter whether this asserted basis for the untimeliness of the Application would constitute "reasonable cause" under Section 470(a), 47 P.S. § 4-470(a), because, even if the Application was accepted *nunc pro tunc*, renewal

12

could not have been granted as a result of Licensee's nonpayment of State sales taxes.

### B. The Nonpayment of State Sales Taxes

The Board argues that it, and by extension common pleas, is precluded from renewing the License by the Code and, therefore, common pleas erred in granting Licensee's appeal and directing the renewal of the License with conditions. Citing Sections 470(a) and 477(d) of the Code, as well as *3 Ram, Inc. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth., No. 637 C.D. 2017, filed March 28, 2018),[10] the Board maintains it is statutorily precluded from renewing a liquor license where a licensee has failed to pay its State taxes and obtain tax clearance from Revenue.

Section 470(a) of the Code addresses the renewal of liquor licenses and states, in pertinent part, that:

> **All applications for** . . . **renewal of licenses** under the provisions of this article **shall be filed with tax clearance from the Department of Revenue** and the Department of Labor and Industry and requisite license and filing fees, . . . at least sixty days before the expiration date of same . . . .

47 P.S. § 4-470(a) (emphasis added). Section 477 of the Code, which is titled "Applicants to provide [S]tate tax identification numbers and statement of [S]tate tax status . . . ," provides, in relevant part:

> (d) The board **shall not approve any application for the** . . . **renewal** . . . of any license . . . **where the applicant has failed to:**

---

[10] The Board cites *3 Ram, Inc.* for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

(1) provide any of the information required by subsection (a);
(2) file required State tax reports; or
(3) **pay any State taxes** not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan.

47 P.S. § 4-477(d) (emphasis added). Recently, this Court considered Section 477(d) and concluded that the word "shall" as used in that provision was mandatory. *3 Ram, Inc.*, slip op. at 10. Accordingly, the Court held that, under this provision, "the Board **ha[s] no authority** to approve a renewal application" "**unless the applicant has paid any [S]tate taxes owed** that are not subject to a timely administrative or judicial appeal or . . . a duly-authorized deferred payment plan." *Id.* at 10-11 (emphasis added). Because there was no dispute that the licensee in *3 Ram, Inc.* did not have the required tax clearance from Revenue, the Board could not approve the renewal application.[11] *Id.*

The analysis in *3 Ram, Inc.* is consistent with the statutory language of Section 477(d) of the Code. Here, as in *3 Ram, Inc.*, there is no dispute that Licensee had not paid the State sales taxes it owed to Revenue at the time Licensee had filed the Application. At the time of the hearing before common pleas, Werner acknowledged that Licensee owed State sales taxes in the amount of "about $25,000." (R.R. at 117a.) There is no evidence that the outstanding amount of State sales taxes was "subject to a timely administrative or judicial appeal or . . . a duly authorized deferred payment plan." 47 P.S. § 4-477(d)(3). "As such, the

---

[11] We also held that because the Board had no authority to approve a renewal application where the licensee did not have the requisite tax clearances, the Board could not be compelled to enter into a conditional licensing agreement as doing so "would have conflicted directly with Section 477 of the . . . Code." *3 Ram, Inc.*, slip op. at 11.

14

Board had no authority to approve [Licensee's] renewal [A]pplication." *3 Ram, Inc.*, slip op. at 11.

Common pleas explained it was authorized by its powers of hearing Licensee's appeal *de novo* to grant the appeal and to direct the Board "to renew the [L]icense on a provisional basis." (Remand Op. at 5-6.) However, although courts of common pleas "are free to substitute their discretion for that of the Board" when considering whether to renew a liquor license, *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24, 28 (Pa. Cmwlth. 2006), the Board **had no discretion** to renew Licensee's License. Pursuant to the plain language of Section 477(d), the Board "shall not approve" the renewal of the License. 47 P.S. § 4-477(d). Because the Board lacked the discretion to renew the License under the Code, common pleas likewise could not do so. Therefore, common pleas erred when it directed the Board to renew the License.[12]

Accordingly, common pleas' Orders are reversed.

**RENÉE COHN JUBELIRER,** Judge

---

[12] It is commendable that common pleas attempted to resolve this matter in a fair manner given the deficiency of the notices and the loss of the License; however, for the reasons set forth, it did not have the legal authority to direct the renewal of that License.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board,   :
                    Appellant   :
                                :
            v.            :   No. 104 C.D. 2018
                                :
Stone Neapolitan Pizzeria, Inc.   :

# **O R D E R**

**NOW**, February 13, 2019, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge