IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arena Beverage Corp.                         :
                                             :
                                             :
                                             :
            v.                               :
                                             :
                                             :
Pennsylvania Liquor Control Board,           :    No. 1960 C.D. 2013
                        Appellant            :    Submitted: March 14, 2014


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                  FILED: July 30, 2014


            The Pennsylvania Liquor Control Board (Board) appeals from the
Allegheny County Common Pleas Court's (trial court) October 8, 2013 order granting
Arena Beverage Corporation's (Licensee) appeal *nunc pro tunc* and requiring the
Board to renew Licensee's Restaurant Liquor License No. R-18325 (License). The
sole issue for this Court's review is whether the trial court erred as a matter of law or
abused its discretion when it granted Licensee's *nunc pro tunc* appeal. Upon review,
we reverse.

            Licensee holds the License for the premises located at 330 Hookstown
Grade Road, Moon Township, Pennsylvania. Licensee filed an application to renew
the License for the licensing term beginning June 1, 2011 and ending May 31, 2013.
By letter dated September 13, 2012 (Objection Letter), the Board's Bureau of
Licensing (Licensing) notified Licensee that it objected to the License renewal based
on the following objections:

[a)] The applicant has failed to verify and the Department of Revenue [(Revenue)] has not informed the Board that all State taxes have been filed and all State taxes have been paid, timely appealed or approved for deferred payment as required by Section 477 of the Liquor Code,[1] as amended effective July 1, 1987, for the licensing periods effective June 1, 2010 and June 1, 2011.

[b)] The validation application for the licensing period effective June 1, 2010 was filed on September 29, 2010, whereas it should have been filed on or before April 2, 2010.[2]

[c)] The renewal application for the licensing period effective June 1, 2011 was filed on June 4, 2012, whereas it should have been filed on or before April 4, 2011.

[d)] The applicant has failed to submit the validation application for the licensing period effective June 1, 2012 as required by Section 3.3 of Title 40, Pennsylvania Code.

[e)] The applicant has failed to submit the Notice of Waiver in Lieu of Board Hearing/Statement, form PLCB-1136[.]

Reproduced Record (R.R.) at 18a. The Objection Letter further stated:

The [Board] HAS NO AUTHORITY to remedy any dispute over a failure to issue a tax clearance by either the [Revenue], or the Department of Labor and Industry [(L&I)], or both. This is a matter strictly between you, the licensee, and the taxing authority. Do not assume that payment of all taxes constitutes clearance. Renewal of your license by the [Board] requires notification from the taxing agency(s) to the [Board].

*Id*. The Objection Letter also informed Licensee that a hearing would be scheduled, and if Licensee was represented by counsel, it should forward the extra copy of the

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-477.
[2] Restaurant liquor licenses are renewed every two years. In the intervening year, a licensee is required to validate its license. In order to renew or validate a license a licensee must have tax clearance confirmed.

letter to counsel. The letter also enclosed a copy of Section 464 of the Liquor Code[3] and Section 3.41 of the Board's Regulations.[4]

On September 27, 2012, Licensing notified Licensee that a hearing would be held on October 18, 2012 concerning the aforementioned objections. Licensee's principal James E. Lignelli (Lignelli) appeared, and Lignelli's wife Catherine Gee (Gee) testified at the October 18, 2012 hearing held before a Board hearing examiner. Licensee was not represented by counsel.

By December 20, 2012 order, the Board refused renewal of the License. No timely appeal was filed. On June 7, 2013, almost 6 months after expiration of the appeal period which ended on January 9, 2013, Licensee filed an appeal *nunc pro tunc* with the trial court.

On September 5, 2013, the trial court held a *de novo* hearing at which both Lignelli and Gee testified. Gee recounted that upon receiving the Objection Letter she contacted Revenue and was informed that there were "no issues." R.R. at 114a. She further reported that there had been an issue with L&I involving outstanding taxes, but she had resolved it. Gee testified that based on the information she had received from Revenue and L&I that when she attended the Board hearing she believed all outstanding taxes had been resolved. Licensee presented a document to the trial court evidencing Licensee's L&I tax clearance. Licensee did not produce a similar certificate from Revenue, but instead offered a printout of a June 7, 2013 email from a Revenue employee which stated: "Everything looks good for clearance. But their [Board] license expired in 2010." Original Record at No. 11, Exhibit L2. Gee admitted on cross-examination that when Licensee received the Board's

---

[3] 47 P.S. § 4-464 (governing Board license hearings; provides for a twenty-day appeal period from Board decisions).

[4] 40 Pa. Code § 3.41 (relating to application hearings).

December 20, 2012 order, it did "nothing" until "May or June" when it contacted counsel. R.R. at 122a.

Lignelli testified that, at the time of the Board hearing, he believed all of Licensee's taxes were paid. He stated that when he received the Board's December 20, 2012 order, he believed that although the License had not been renewed for the licensing term at issue, the License would be available to Licensee again after the non-renewed term expired. R.R. at 139a-140a. Lignelli further explained that he did not plan to use the License and attempted to sell it, but while preparing to sell the License in March 2013, he learned that the License "didn't exist." R.R. at 141a. Lignelli contacted counsel in "April or May of 2013" and an appeal was filed with the trial court on June 7, 2013. R.R. at 142a.

On October 8, 2013, the trial court granted Licensee's appeal *nunc pro tunc* and ordered the Board to renew the License upon payment of necessary fees or penalties. The trial court opined:

> This case appears to elevate form over substance and places much greater weight on receiving documents from a sister state agency than it does on whether the licensee does or does not owe any taxes. In this case, it is clear that [Licensee] did not owe any taxes. Ms. Gee, however, could not navigate the labyrinthine halls of state agencies to come up with the certificate the Board wanted. Coupled with this is **the low priority that the licensee assigned to this minimal revenue[-]producing aspect of their business.** It appears, however, that [Licensee] does not want to lose its total investment of $50,000 in the license which it bought in 1999. It therefore seems to me that the best course of action is for me to grant renewal of the [L]icense and then place it in escrow to enable [Licensee] to recover its investment. This reasonable and equitable suggestion was vigorously opposed by counsel for the Board . . . .
>
> The fact remains, however, that the [L]icense here was not renewed – not because of unpaid taxes, but because Gee could not get the kind of 'clearance' the Board wanted. True to its assertion that the matter of taxes is between the

4

Agency and [L]icensee, the Board here would take no steps to bridge this gap between paying all taxes and a writing that says you have paid all taxes. Would a call from a Board staff to [Revenue] been too much to ask?

**While the [L]icensee would have benefitted from retaining a lawyer in this case, I do not think its ignorance of 'clearances' and how to get them should be the basis to lose a $50,000 investment. Accordingly I grant the appeal _nunc pro tunc_; I order the [L]icense renewal after [L]icensee has paid all fees, or penalties associated with the [L]icense.**

R.R. at 165a-166a (emphasis added). The Board filed a timely appeal to this Court.[5]

The Board contends that the trial court erred in granting Licensee's _nunc pro tunc_ appeal because it did not apply and analyze the required factors for granting a _nunc pro tunc_ appeal, and the record evidence does not support such relief. We agree.

"Where the legislature has fixed a time period within which an appeal may be filed, that period is **mandatory** and **may not be extended as a matter of grace or indulgence.**" _Olson v. Borough of Homestead_, 443 A.2d 875, 878 (Pa. Cmwlth. 1982) (emphasis added); s_ee also Hillanbrand v. Pennsylvania Bd. of Prob. & Parole_, 508 A.2d 375 (Pa. Cmwlth. 1986); _Coshey v. Beal_, 366 A.2d 1295, 1297 (Pa. Cmwlth. 1976) ("[T]he timeliness of an appeal goes to the jurisdiction of the body appealed to and its competency to act").

"[A]n appeal _nunc pro tunc_ is a recognized exception to the general rule prohibiting the extension of an appeal deadline. . . . [It] is intended as a **remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances.**" _Union Elec. Corp. v. Bd. of Prop. Assessment_, 746

---

[5] "Where the trial court permits an untimely appeal to be filed _nunc pro tunc_, our review is limited to determining whether the trial court abused its discretion or committed an error of law." _Puckett v. Dep't of Transp., Bureau of Driver Licensing_, 804 A.2d 140, 143 n.6 (Pa. Cmwlth. 2002).

A.2d 581, 584 (Pa. 2000) (quotation marks omitted, emphasis added). "'[A]n appeal *nunc pro tunc* may be granted . . . in order to prevent injustice' in unique cases, 'upon a showing that **unusual circumstances prevented a party from timely filing.'"** *In re Borough of Riegelsville from Bucks Cnty. Bd. of Assessment & Revision of Taxes*, 979 A.2d 399, 402-03 (Pa. Cmwlth. 2009) (emphasis added) (quoting *Hanoverian, Inc. v. Lehigh Cnty. Bd. of Assessment*, 701 A.2d 288, 289 (Pa. Cmwlth. 1997)). This Court has explained:

> [*N*]*unc pro tunc* relief may only be granted in limited circumstances. '**When a statute fixes the time within which an appeal may be taken, a court may not extend that time period or allow an appeal *nunc pro tunc* absent a showing that extraordinary circumstances involving fraud or its equivalent, duress, or coercion *caused the delay in filing an appeal*.'**

*Id.* at 402 (bolded emphasis added).

In determining whether extraordinary circumstances exist, a court **must** consider whether there was fraud or a breakdown in the court's operations or whether the party seeking relief has proven that:

> (1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay.

*Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001); *see also Baum v. Dep't of Transp.*, 949 A.2d 345 (Pa. Cmwlth. 2008).

Thus, in the instant matter, the trial court was **required** to first address whether "extraordinary circumstances involving fraud or its equivalent, duress, or coercion *caused the delay in filing an appeal*." *Borough of Riegelsville*, 979 A.2d at 402 (quoting *Hanoverian, Inc.*, 701 A.2d at 289). Only if the trial court concluded that such extraordinary circumstances existed, did it have jurisdiction to decide the

6

substantive issues of whether the Board properly refused Licensee's renewal application. The trial court made **no** such analysis. Instead, without applying or evaluating whether the record evidence supported *nunc pro tunc* relief, the trial court considered the substantive issues and then assumed jurisdiction based upon its perceived unfairness of the Board's decision.

Despite the trial court's failure to engage in the mandated *nunc pro tunc* analysis when it granted the untimely appeal, Licensee asserts that the trial court's action was proper, and makes several arguments in support of its position that there was an administrative breakdown in the Board's process. It also maintains that it took timely action after discovering the missed deadline, and that the Board was not prejudiced by the granting of its *nunc pro tunc* appeal.

First, Licensee argues that there was an administrative breakdown because the Board's December 20, 2012 order denying its License renewal was not accompanied "by any findings of fact, conclusions of law or opinion which would guide [Licensee] as to the basis of the denial of the renewal of its [L]icense." Licensee Br. at 11. As such, Licensee insists that the Board failed to comply with Section 464 of the Liquor Code, and that the lack of compliance inhibited Licensee's ability to appeal from the Board's decision.[6]

We reject Licensee's argument that pursuant to Section 464 of the Liquor Code, the Board was required to include the reasons for the Board's License

---

[6] Section 464 of the Liquor Code, 47 P.S. § 4-464, provides, in relevant part:

> If the board shall refuse such license, renewal or transfer or the renewal of an amusement permit, following such hearing, notice in writing of such refusal shall be mailed to the applicant at the address given in his application. In all such cases, the board shall file of record at least a brief statement in the form of an opinion of the reasons for the ruling or order and furnish a copy thereof to the applicant.

renewal denial in its December 20, 2012 order. Notably, Section 464 of the Liquor Code requires the Board to mail a "notice in writing of such refusal" to the applicant at his address. 47 P.S. § 4-464. It then separately addresses the Board's responsibility to file and furnish an opinion, stating, "the board shall **file of record** at least a brief statement in the form of an opinion of the reasons for the ruling or order **and furnish a copy thereof to the applicant.**" *Id*. (emphasis added). Giving the statutory words their plain meaning, as we must,[7] Section 464 of the Liquor Code clearly contemplates circumstances in which the Board may mail its license renewal refusal to a licensee and, thereafter, file an opinion of record and furnish it to the licensee. In its December 20, 2012 order, the Board stated that "[i]n the event an appeal is filed[,] an [o]pinion will be issued." R.R. at 23a. There is nothing in the Liquor Code that required the Board to furnish its opinion to Licensee before the appeal period expired.[8] Consequently, there was no administrative breakdown in the

---

[7] Our Supreme Court recently explained:

> To determine the legislature's intent . . . we necessarily turn to the Statutory Construction Act. 1 Pa.C.S.[] §§ 1501 *et seq*. The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.[] § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When considering statutory language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage.' 1 Pa.C.S.[] § 1903(a). Further, when the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute 'under the pretext of pursuing its spirit.' *Id*. § 1921(b).

*Lancaster Cnty. v. Pennsylvania Labor Relations Bd.*, ___ A.3d ___, ___ (Pa. No. 36 M.A.P. 2013, filed June 16, 2014).

[8] This interpretation of Section 464 of the Liquor Code is substantially the same as the process set forth in Pennsylvania Rule of Appellate Procedure 1925(a)(1), which pertains to appeals from lower courts, and provides:

> Except as otherwise prescribed by this rule, **upon receipt of the notice of appeal**, the judge who entered the order giving rise to the

8

Board's process of issuing its order refusing the License renewal and thereafter filing its opinion in support thereof.

Further, we reject Licensee's assertion that because the Board's order did not include specific reasons for the Board's refusal, the Licensee was unable to timely appeal from the order. First, as discussed above, the Board has no statutory obligation to set forth the reasons for its non-renewal in its "notice in writing of such refusal." Second, there could be no confusion as to the rationale for the Board's refusal. The record evidence demonstrates that Licensee received the Board's Objection Letter[9] and then a notice of hearing which clearly explained the reasons for the objection. Further, Licensee's principals attended the administrative hearing, at which time the objections were raised and addressed, and Licensee was advised that the Board still did not have proof of Licensee's tax clearance. Thus, Licensee's

> notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1) (emphasis added).

[9] "When a potential licensee seeks permission from the state to engage in alcoholic beverage sales, that licensee does so with full notice of all relevant statutory provisions[.]" *Replogle v. Pa. Liquor Control Bd.*, 506 A.2d 499, 500 (Pa. Cmwlth. 1986), *aff'd*, 523 A.2d 327 (Pa. 1987). Moreover, the Board's Objection Letter to Licensee enclosed a copy of Section 464 of the Liquor Code which states, in relevant part:

> Any applicant who has appeared at any hearing, as above provided, who is aggrieved by the refusal of the board to issue any such license or to renew or transfer any such license . . . **may take an appeal limited to the question of such grievance, within twenty days from date of refusal** or grant, to the court of common pleas of the county in which the premises or permit applied for is located.

47 P.S. § 4-464 (emphasis added). The Objection Letter also advised Licensee that "[i]f you are represented by Legal Counsel, please forward the extra copy to your attorney." R.R. at 50a. Despite being sent a copy of the applicable law, Licensee failed to comply with the Liquor Code's explicitly clear language requiring a licensee to file an appeal from a Board decision denying a license renewal within twenty days.

argument is disingenuous that it was without knowledge of the reasons for the Board's order and that this lack of knowledge somehow prevented Licensee from filing its appeal until 6 months after expiration of the appeal period. The record evidence establishes that Licensee knew or should have known of the reasons for non-renewal of its License and that it had twenty days to appeal from that refusal.[10] Accordingly, we conclude that the Board not including the specific reasons for its refusal to renew Licensee's License in its December 20, 2012 order did not constitute an administrative breakdown justifying *nunc pro tunc* relief.

Licensee further alleges an administrative breakdown occurred because the Board had an obligation to advise Licensee that, barring an appeal, the Board's refusal of Licensee's renewal application for the licensing term at issue would result in the permanent loss of its License.[11] Licensee does not allege that it was advised by any Board representative that, in the absence of an appeal, the License would still be available after the expiration of the subject licensing term nor is there any record evidence that Licensee was in any manner misinformed or misled. An agency is not required to "list . . . all of the consequences which could result from a decision not to appeal an adverse . . . determination." *Wojciechowski v. Unemployment Comp. Bd. of Review*, 407 A.2d 142, 143 (Pa. Cmwlth. 1979).[12] The law is well-established that

---

[10] Licensee knew the Board had refused to renew its License. The Liquor Code provides for a *de novo* hearing wherein a "trial court may alter the decision of the [Board] even if its findings of fact are identical to those made by the [Board]." *Pennsylvania Liquor Control Bd. v. Richard E. Craft Am. Legion Home Corp.*, 718 A.2d 276, 278 (Pa. 1998). Thus, in an appeal under Section 464 of the Liquor Code, a trial court is free to consider any relevant evidence and legal arguments made by the parties and may decide the case anew. Given the trial court's ability to conduct a *de novo* hearing, and make its own findings of fact and conclusions of law, the absence of a rationale contained in the Board's order also undermines Licensee's contention that not having the Board expressly state its reasons for renewing its License prevented it from filing its appeal.

[11] Licensee's brief attempts to frame the Board's action as a license revocation. The Board did not revoke the License. Instead, after receiving and reviewing Licensee's renewal application, the Board concluded it was statutorily barred from approving it.

[12] This Court has recognized that "due process 'does not even require an administrative agency to provide a party with notice of the right to appeal the agency's decision when the agency

10

where a liquor license is not renewed, and the Board's decision is not appealed, the license ceases to exist. *See Replogle v. Pa. Liquor Control Bd.*, 506 A.2d 499 (Pa. Cmwlth. 1986), *aff'd*, 523 A.2d 327 (Pa. 1987). Had Licensee educated itself or retained counsel, it would have been aware of the ramifications of a Board decision denying renewal of a license.[13] It chose not to do so. While we are sympathetic to Licensee's situation, "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Vann v. Unemployment Comp. Bd. of Review*, 494 A.2d 1081, 1086 (Pa. 1985) (quoting *Groch v. Unemployment Comp. Bd. of Review*, 472 A.2d 286, 288 (Pa. Cmwlth. 1984)). Accordingly, the Board not advising Licensee that failure to appeal the non-renewal of its License would result in the loss of its License does not evidence an administrative breakdown in the Board's process.

Finally, Licensee maintains that there was an administrative breakdown in communications between the Board and Revenue because, according to Licensee, its taxes were paid, but the Board did not have confirmation of tax clearance, and both the Board and Revenue failed to ensure that the Board's information was correct. This argument must fail because it relates to the merits of Licensee's appeal rather than satisfying the requirements for *nunc pro tunc* relief. The correct issue to be addressed is whether "extraordinary circumstances involving fraud or its equivalent, duress, or coercion *caused the delay in filing an appeal*." *Borough of Riegelsville*, 979 A.2d at 402 (quoting *Hanoverian, Inc.*, 701 A.2d at 289). Thus, Licensee's argument does not support the granting of *nunc pro tunc* relief.

_____

or the Legislature . . . has provided a duly published procedure for a hearing or appeal after such order.'" *Seropian v. State Ethics Comm'n*, 20 A.3d 534, 539-40 (Pa. Cmwlth. 2011) (quoting *Walker v. Unemployment Comp. Bd. of Review*, 381 A.2d 1353, 1354 (Pa. Cmwlth. 1978)).

[13] Notably, Licensee's counsel does not argue in this appeal that the Board's refusal of the renewal application did not result in the permanent loss of the License.

Licensee's assertion that it took timely action after discovery of the missed appeal deadline is without merit. First, the undisputed record evidence reveals that the only reason Licensee missed the mandatory appeal period was because upon receipt of the Board's December 20, 2012 order refusing renewal, Licensee chose to do "nothing[.]" R.R. at 122a. As the trial court itself recognized, Licensee considered the License to be a "low priority." R.R. at 165a. Approximately two months after the appeal period expired, in March 2013, Licensee discovered its License was in jeopardy. Licensee Br. at 14-15; R.R. at 141a. Licensee did not meet with counsel until "April or May of 2013." R.R. at 142a. Licensee's appeal was not filed until June 7, 2013. R.R. at 168a. Making the decision to do "nothing" in response to a time-sensitive appeal cannot satisfy the required criteria for *nunc pro tunc* relief. Moreover, waiting for a month or more after learning that the License was in jeopardy, and then another month or more to file the appeal is not timely action. [14]

We conclude that the trial court abused its discretion and committed an error of law when it granted Licensee's *nunc pro tunc* appeal without considering and applying the mandatory factors which must be present before *nunc pro tunc* relief may be granted. We further rule that the record evidence does not reveal fraud, non-negligent circumstances or an administrative breakdown caused Licensee's late-filing. There were no extraordinary circumstances to justify the trial court's extension of the legislatively-mandated twenty-day appeal period.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

---

[14] Because we find that Licensee did not satisfy the first two prongs of the test justifying *nunc pro tunc* relief, we need not address whether the Board was prejudiced by the delay.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arena Beverage Corp.                    :
                                        :
                                        :
                                        :
        v.                              :
                                        :
                                        :
                                        :
Pennsylvania Liquor Control Board,      :    No. 1960 C.D. 2013
                        Appellant       :

## O R D E R

AND NOW, this 30th day of July, 2014, the Allegheny County Common Pleas Court's October 8, 2013 order is reversed.


                                  _____
                                  ANNE E. COVEY, Judge