IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William M. Autry, Jr., : 
                Petitioner : 
                 : 
         v. : No. 117 C.D. 2021
                 : No. 118 C.D. 2021
Unemployment Compensation Board : Submitted: August 27, 2021
of Review, : 
            Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: December 22, 2021

      William M. Autry, Jr. (Claimant), *pro se*, petitions for review from the December 16, 2020 Orders of the Unemployment Compensation Board of Review (Board) dismissing, as untimely, Claimant's appeals of determinations that found him ineligible for unemployment compensation (UC) benefits pursuant to 401(d)(1) and 402(b) of the UC (Law),[1] and assessing a fault overpayment. Certified Record (C.R.), Item No. 14. Discerning no error below, we affirm the Board's Orders dismissing Claimant's appeals.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-919.10. Section 401(d)(1) and 402(b) of the Law are located, respectively, at 43 P.S. §801(d)(1) and §802(b).

# I. Background and Procedural History

On April 19, 2020, Claimant filed an application for UC benefits in which he stated that his reason for leaving his position with MI Windows & Doors (Employer), was "lack of work/laid off." C.R., Item No. 2. In addition, he acknowledged he had a "definite date of recall" from Employer of April 30, 2020, and that he was not available for work because of a "14[-]day self-quarantine." *Id*.

The local UC service center mailed a Notice of Determination to Claimant on August 26, 2020, denying him benefits under Section 401(d)(1) of the Law because he had not shown that he was able or available for suitable work.[2] C.R., Item No. 6. In addition, the UC service center mailed a separate Notice of Determination to Claimant, denying him benefits under Section 402(b) of the Law because he had voluntarily quit his job with Employer and had not demonstrated a necessitous and compelling reason for doing so.[3] A third Notice of Determination

---

[2] Section 401(d)(1) of the Law reads:

> Compensation shall be payable to any employe who is or becomes unemployed, and who—
>
> ….
>
> (d) (1) Is able to work and available for suitable work: Provided, that no otherwise eligible claimant shall be denied benefits for any week because he is in training with the approval of the secretary nor shall such individual be denied benefits with respect to any week in which he is in training with the approval of the secretary by reason of the application of the provisions of this subsection relating to availability for work or the provisions of section 402(a) of this act relating to failure to apply for or a refusal to accept suitable work.

43 P.S. §801(d)(1).

[3] Section 402(b) of the Law reads, in pertinent part:

> An employe shall be ineligible for compensation for any week--

**(Footnote continued on next page…)**

was mailed to Claimant indicating that he had received UC benefits to which he was not entitled because he had voluntarily quit his job. Each of the three notices stated that the final day to file an appeal was September 10, 2020. *Id*.

Claimant filed his appeals on September 17, 2020, and on October 14, 2020, a UC referee (Referee) conducted a hearing at which Claimant testified. Employer did not participate in the hearing. The Referee dismissed Claimant's

----

….

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature: And provided further, That no employe shall be deemed to be ineligible under this subsection where as a condition of continuing in employment such employe would be required to join or remain a member of a company union or to resign from or refrain from joining any bona fide labor organization, or to accept wages, hours or conditions of employment not desired by a majority of the employes in the establishment or the occupation, or would be denied the right of collective bargaining under generally prevailing conditions, and that in determining whether or not an employe has left his work voluntarily without cause of a necessitous and compelling nature, the [the Pennsylvania Department of Labor & Industry (Department)] shall give consideration to the same factors, insofar as they are applicable, provided, with respect to the determination of suitable work under section four (t): And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d). Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy . . . .

43 P.S. §802(b).

appeals as untimely because Claimant filed them seven days after the due date.[4]  The

Referee found:  "[C]laimant was not misinformed nor in any way misled regarding

the right of appeal or the need to appeal."  C.R., Item No. 12.  In his Decision in

regard to Claimant's Appeal Number 20-09-D-E747, the Referee stated:

> Section 501(e) of the Law provides that a Notice of Determination shall become final and compensation shall be paid or denied in accordance therewith unless an appeal is filed within the fifteen-day period after proper notification of said determination has been given to all affected parties.[5]
>
> Our Courts have held that an appeal filed even one day late must be considered untimely.  Furthermore, "it is not the placing of the appeal in the mail which determines when the appeal is deemed filed; the placement of an official U.S. postmark on the envelopes containing the appeal notice is the determining fact." *Se. Pa. Transp. Auth. v. Unemployment Comp. Bd. of* [*Rev.*], 661 A.2d 505, 507 (Pa. Cmwlth. 1995).

---

[4]  The Referee issued a Decision in regard to Appeal Number 20-09-D-E747, relative to Claimant's denial under Section 401(d)(1) of the Law. C.R., Item No. 12.  The Referee also issued a Decision in regard to Appeal Number 20-09-D-E748, which addressed Claimant's denial of UC benefits under Section 402(b) of the Law and the UC service center's Notice of Determination that Claimant had received an overpayment of UC benefits. *Id.*

[5] Section 501(e) of the Law reads:

> Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the [D]epartment under section five hundred and one (a), (c) and (d), **within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address**, and applies for a hearing, such determination of the [D]epartment, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(e) (emphasis added.)

The provisions of this Section of the Law are mandatory, and the Referee has no jurisdiction to allow an appeal filed after the expiration of the statutory appeal period. The claimant's appeal is, therefore, dismissed.

C.R., Item No. 12. The Referee made essentially the same points in his dismissal of Claimant's Appeal Number 20-09-DE748. Claimant subsequently appealed the Referee's Decisions to the Board.

In Orders mailed on December 16, 2020, the Board opined as follows:

The [Board], after considering the entire record in this matter, concludes that the determination made by the Referee is proper under the [Law]. Therefore, the Board adopts and incorporates the Referee's findings and conclusions.

[Claimant] did not establish a sufficient reason to treat his appeal as timely. [Claimant] testified that he was not going to appeal but people told him he should. It was [Claimant's] responsibility to decide what to do on time.

The Board enters the following order:

The decision of the Referee is affirmed.

C.R., Item No. 14. Claimant now petitions this Court for review of the Board's Orders.[6]

---

[6] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422 (Pa. 2003).

We note here that, on March 31, 2021, the Board filed an Application for Relief in the Form of a Consolidation of Claimant's Petitions for Review with this Court seeking consolidation because:

3. . . . Although the underlying determinations involved different issues, Claimant filed one appeal that was late to both determinations. The cases were consolidated before the UC Referee and a single hearing was held for both. Both appeals were dismissed as untimely for the same reason.

**(Footnote continued on next page…)**

5

## II. Arguments

## A. Claimant's Arguments

Claimant states that, in March 2020, he was on approved leave from his job with Employer under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, 2611-2620, 2631-2636 and 2651-2654, in order to travel to Louisiana for the adoption of his newborn son. He adds that, when he returned to work on April 20, 2020, he was informed that he was required to go home and quarantine because he had been to Louisiana, which was a COVID-19 "hotspot" at the time. Claimant's Br. at 5. Claimant states "[he] was allowed to sign[-]up for unemployment due to COVID," and that "the government was also allowing an extra $500 when unemployment was due to COVID." *Id.* He stated that after applying for benefits, he received a confirmation letter stating that his application was being processed, as well as a Notice of Financial Determination stating that he "qualified financially and that [his] weekly benefit rate would be $523 and an additional $5[.00] dependent's allowance." *Id.*

Claimant asserts that, after applying for UC benefits, "weeks went by and [he] never received anything." *Id.* Claimant states that he then "tried calling the [UC] telephone numbers and tried over and over again . . . to get through on the chat line," but that it "was impossible because at that time the [UC] [s]ystems were totally overwhelmed due to C[OVID]." *Id.*

---

4. The Board respectfully submits that the consolidation of these cases where the same question and same evidence are involved, for certification of the record, argument, and opinion, would be in the interest of the efficient administration of justice, thereby aiding this Court in the resolution of the instant appeals.

Board's Application for Relief in the Form of a Motion for Consolidation of Cases, 3/31/21, at 2. On April 23, 2021, the Court granted the Board's Application and consolidated the cases.

Claimant adds that he eventually received a determination informing him that he did not qualify for UC benefits because he had voluntarily quit his job and that he was not able or available for work. Further, Claimant acknowledges receiving notification that he had received $523.56 in UC benefits[7] to which he was not entitled and that he was required to return same. Claimant's Br. at 6. Claimant states that "[d]ue to the fears and uncertainty at this time because of COVID and all the new government rules at work and in society, plus a newborn infant, I didn't get my appeal letter in on time." *Id.* He adds: "I did appeal the issues but it was [seven] days late. This does not change the facts of the case." *Id.*

Claimant notes:

> After appealing this to Commonwealth Court, in January 2021, I suddenly received a bank card from [UC]. This whole case was still in the appeal process so why did I suddenly get a bank card in the mail? I have no idea how much is on the card because I didn't activate it. I didn't know how it would affect this appeal process and I was afraid they would say that I got more money I wasn't entitled to.
>
> After that I received a UC 1099 form in the mail saying that I received $1,115.00 in [UC] for the tax year 2020. I did not receive any compensation in 2020! I had to report this on my income tax return! All of the information they are telling me is incorrect. They must have my case mixed up with a different person.

Claimant's Br. at 7.

In sum, Claimant argues that he has been wrongly denied UC benefits and that he was wrongly charged over $500 for monies he never received. He asserts

---

[7] The Notice of Determination Overpayment of Benefits form indicates that Claimant was overpaid $515.00. C.R., Item No. 6. Claimant attached a document to the brief he filed with this Court entitled "UC Fault Overpayment Billing Notice & Statement of Account," from the Department, with a mailing date of January 8, 2021. This document reflects a balance due of $523.56, that appears to be the full amount of Claimant's fault overpayment, plus interest. *See* Claimant's Br., last page (unnumbered), after the Certificate of Service.

"that [he] never received money from UC and [he does not] owe money back." Claimant's Br. at 8. Claimant adds that he believes his case "should be judged on its merits and not by a simple date on a paper." *Id*. He states that he "think[s] that the time limits to appeal should be increased so that busy people have a decent time frame in which to appeal" and that "even the people that work for the [UC] office would have to admit that back then, and even now, [they have] been overwhelmed and understaffed and mistakes have been made." *Id*. Claimant also argues that the United States Postal Service (USPS) was understaffed at this time due to COVID-19, which resulted in "failure to deliver mail in a timely manner."[8] Claimant's Br. at 4.[9]

Claimant requests that this Court "judge this case on the facts" and that he "would like to receive money that [he] was truly entitled to when [he] was quarantined," and "would like to receive something in writing stating that [he] do[es] not owe [UC] any money" and "something in writing stating that the 1099 form is

---

[8] We note here that Claimant does not specifically argue, or present any evidence, that USPS staffing issues directly affected *his* receipt of any of the documents at issue in the present appeal. Claimant testified that he received the Notice of Determination in regard to an overpayment of UC benefits "a few weeks later" than the other two Notices of Determination that indicated his benefits had been denied. C.R., at Item No. 11. However, Claimant also acknowledged in his testimony, in response to a question from the Referee, that he had "the Determinations" prior to September 10, 2020, and that he was aware of the September 10, 2020 deadline to file any appeal(s). *Id*.

[9] In his brief to this Court, Claimant states: "I was allowed to submit a second appeal and definitely returned it on time." Claimant's Br. at 6. He also states: "This second appeal was denied because the first appeal wasn't received on time for no good reason." *Id*. However, Claimant does not specifically expand upon what he means by "a second appeal," and the record does not reflect any appeals filed by Claimant other than what he filed on September 17, 2020. C.R., Item No. 7.

incorrect" and "to be told what [he] should do with [the] bank card that [he] got in the mail in January [2021]." Claimant's Br. at 10.

## B. The Board's Arguments

The Board argues that "[w]hile non-negligent circumstances may excuse a late appeal, negligent circumstances cannot." Board's Br. at 6. Citing *United States Postal Service v. Unemployment Compensation Board of Review*, 620 A.2d 572 (Pa. Cmwlth. 1993), and 34 Pa. Code §101.82(a),[10] the Board notes that Section 501(e) of the Law allows a party 15 days to file an appeal from the date of a determination of the Department. Quoting *Shea v. Unemployment Compensation Board of Review*, 898 A.2d 31 (Pa. Cmwlth. 2006), the Board argues that the 15-day time limit is mandatory and if an appeal is not timely filed, "the Board does not have the requisite jurisdiction to consider the matter." Board's Br. at 7 (quoting *Shea*, 898 A.2d at 33). Further quoting *Shea*, the Board states: "Appeal periods, even at the administrative level, are jurisdictional and may not be extended as a matter of grace or indulgence; otherwise, there would be no finality to judicial action." Board's Br. at 7 (quoting *Shea*, 898 A.2d at 33) (internal citation omitted).

The Board acknowledges that, in certain limited circumstances, it can consider an untimely appeal. However, the burden for justifying an untimely appeal is heavy. The Board states: "In order to be entitled to have a case heard on the merits after the time for appeal passes, the party must first prove circumstances justifying *nunc pro tunc* relief." Board's Br. at 7. Relying on *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194 (Pa. Cmwlth. 2008), the Board states "[a]n appeal *nunc pro tunc* may be allowed when there is (1) fraud

---

[10] 34 Pa. Code §101.82(a) states that an appeal shall be filed "on or before the 15th day after the date on which notification of the decision of the Department was delivered personally to the appellant or mailed to him at his last known post office address."

9

or some breakdown in the administrative authority's operation; (2) non-negligent conduct of an attorney or his staff; or (3) non-negligent conduct of the claimant" and that "[t]he non-negligent standard means conduct that is beyond the control of the claimant." Board's Br. at 7-8 (citing *Hessou*, 942 A.2d at 197-98).

The Board points out that, at the hearing before the Referee, Claimant, here, acknowledged being aware of the September 10 deadline and that, originally, he was not going to appeal the determinations, eventually changing his mind because "people advised" him to appeal. Board's Br. at 8. The Board argues that no allowance for a late appeal is given when a claimant, such as Claimant here, has control over the circumstances which resulted in the late appeal. The Board cites our decision in *Guat Gnoh Ho v. Unemployment Compensation Board of Review*, 525 A.2d 874 (Pa. Cmwlth. 1987), in support of this proposition. In *Guat Gnoh Ho*, the claimant was traveling abroad visiting her sick mother when a UC determination arrived at her home. The claimant failed to file a timely appeal, even though she had been made aware that she had received a letter, and this Court held "'[h]er failure to take measures to ascertain the contents of the letter resulted in her delaying in filing the appeal' and it was untimely and properly dismissed by the Board." Board's Br. at 9 (quoting *Guat Gnoh Ho*, 525 A.2d at 875-76).

The Board adds that Claimant's assertion about the short appeal period is essentially irrelevant because it is statutory and mandatory. Board's Br. at 12. The Board argues that "because Claimant failed to file a timely appeal, neither the Board nor this Court can consider the merits." Board's Br. at 12 (citing *Lopresti v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 561 (Pa. Cmwlth. 2012)).

The Board also notes that Claimant's contentions in his brief to this Court, that the USPS was understaffed and that mail was not delivered in a timely

10

manner, are waived because Claimant made no mention of same in his testimony before the Referee and that "[i]t is well settled that issues must be raised at the earliest possible opportunity." Board's Br. at 10 (citing *Wing v. Unemployment Comp. Bd. of Rev.*, 436 A.2d 179 (Pa. 1981)). The Board adds that "[a] claimant's failure to raise an issue before the Referee results in waiver of the issue." Board's Br. at 9 (citing *Dehus v. Unemployment Comp. Bd. of Rev.*, 545 A.2d 424 (Pa. Cmwlth. 1988)). The Board acknowledges that Claimant "murkily testif[ied] that he did not get the overpayment determination [until] 'a couple weeks later;' however, "Claimant's brief . . . seems only to argue a generalized *possibility* that 'mail' in general may have been delayed due to 'understaffing of the USPS' but offers no evidence that *his* mail was delayed." Board's Br. at 10, n.7 (emphasis in original).

The Board asks this Court to affirm the Board's Orders.

### III.    Discussion

The facts and law in the present matter are clear. Claimant's appeal was seven days late. While it is true that the Board may consider an untimely appeal in some limited circumstances, Claimant would have had to prove that he was entitled to *nunc pro tunc* relief. However, *Hessou* instructs us that short of "(1) fraud or some breakdown in the administrative authority's operation; (2) non-negligent conduct of an attorney or his staff; or (3) non-negligent conduct of the claimant," an appeal *nunc pro tunc* may not be granted. Further, "[t]he non-negligent standard means conduct that is beyond the control of the claimant." Board's Br. at 7-8 (quoting *Hessou*, 942 A.2d at 197-98). Claimant's conduct cannot be construed as "non-negligent." By his own admission, Claimant knew of the deadline to file an appeal, was not sure that he was going to file an appeal, and only finally filed an

11

appeal at the urging of others. Unfortunately, he filed seven days too late for the appeal to be considered.

There is no allegation of fraud in the administrative authority's operation, nor is there any allegation that Claimant's appeal deadline was unknown to him or that, objectively speaking, there were any obstacles beyond his control that would have prevented him from filing his appeal by the deadline.

As our decision in *Guat Gnoh Ho* illustrates, the threshold is high for establishing entitlement to an appeal *nunc pro tunc*. In *Guat Gnoh Ho*, the claimant was attending to her sick mother in Malaysia but was made aware that she had received a letter regarding her UC claim. However, she failed to take action to determine its contents and thus missed her appeal deadline. In the present matter, Claimant was, admittedly, aware of the September 10 appeal deadline but did not take action until one week later.

As we stated in *Arena Beverage Corporation v. Pennsylvania Liquor Control Board*, 97 A.3d 444, 452 (Pa. Cmwlth. 2014) (internal citation to the record omitted), a case involving a refusal to renew a restaurant's liquor license:

> Had Licensee educated itself or retained counsel, it would have been aware of the ramifications of a [Liquor Control] Board decision denying renewal of a license. It chose not to do so. While we are sympathetic to Licensee's situation, "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Vann v. Unemployment Comp. Bd. of* [*Rev.*], 494 A.2d 1081, 1086 ([Pa.] 1985) (quoting *Groch v. Unemployment Comp. Bd. of* [*Rev.*], 472 A.2d 286, 288 ([Pa. Cmwlth.] 1984). Accordingly, the [Liquor Control] Board not advising Licensee that failure to appeal the non-renewal of its License would result in the loss of its License does not evidence an administrative breakdown in the [Liquor Control] Board's process.

Finally, Licensee maintains that there was an administrative breakdown in communications between the [Liquor Control] Board and [the Department of] Revenue because, according to Licensee, its taxes were paid, but the [Liquor Control] Board did not have confirmation of tax clearance, and both the [Liquor Control] Board and [the Department of] Revenue failed to ensure that the [Liquor Control] Board's information was correct. This argument must fail because it relates to the merits of Licensee's appeal rather than satisfying the requirements for *nunc pro tunc* relief. The correct issue to be addressed is whether "extraordinary circumstances involving fraud or its equivalent, duress, or coercion *caused the delay in filing an appeal.*" [*In Re: Appeal of*] *Borough of Riegelsville* [*From the Bucks Cnty. Bd. of Assessment & Revision of Taxes*], 979 A.2d [399,] [] 402[, (Pa. Cmwlth. 2009)] (quoting *Hanoverian, Inc.* [*v. Lehigh Cnty. Bd. of Assessment*], 701 A.2d [288,] 289 [(Pa. Cmwlth. 1997)]). Thus, Licensee's argument does not support the granting of *nunc pro tunc* relief. Licensee's assertion that it took timely action after discovery of the missed appeal deadline is without merit. First, the undisputed record evidence reveals that the only reason Licensee missed the mandatory appeal period was because upon receipt of the [Liquor Control] Board's December 20, 2012 order refusing renewal, Licensee chose to do nothing.

*Arena Beverage Corp.*, 97 A.3d at 452 (emphasis in original).

Here, as in *Arena Beverage Corp.*, the only reason Claimant missed the appeal deadline was because he "*chose* to do nothing." *Id.* (emphasis added). Further, had Claimant educated himself or retained counsel, he would have been aware of the serious ramifications of missing the appeal deadline. That he did not educate himself or retain counsel is unfortunate, but we are constrained by the mandatory nature of the statute's appeal deadline, and thus, we are left without jurisdiction to consider the merits of Claimant's underlying appeal.

As for Claimant's suggestions that the statute should allow more time for an appeal and that the USPS was understaffed, resulting in mail delays, we note first that this Court has no authority to amend a statute, and Claimant's desire to see an expansion of the 15-day appeal period at issue here is of no moment to our disposition. Second, Claimant's assertion about postal delays was not timely raised

13

before the Referee and is, thus, waived. Even if we were able to interpret Claimant's rather vague testimony about receiving the Notice of Determination relative to overpayment of UC benefits, "a couple weeks later,"[11] as a claim that postal delays led him to miss the appeal deadline, Claimant fails to provide enough specificity for us to understand whether, how, or why, any such delays precluded him from meeting the September 10 appeal deadline.[12] In fact, Claimant's acknowledgement that he received (1) all the Notices of Determination; (2) was aware of the appeal deadline; and (3) sat on his appeal rights, further belies any suggestion that USPS staffing levels, or the timing of his receipt of the Notices of Determination, had an impact in the present matter.

Accordingly, we affirm the Orders of the Board dismissing Claimant's appeals.

---

[11] C.R., Item No. 11.

[12] At no point did Claimant contend that the Notice of Determination in regard to overpayment of UC benefits was not mailed by the Department to his last known address on August 26, 2020, as noted on the document itself, or that he received it at a point in time that would have made it impossible for him to meet the September 10, 2020 appeal deadline. *See* C.R., Item No. 6. Moreover, we know, by Claimant's own admission, that he, in fact, received the Notice of Determination indicating a fault overpayment. As further proof that he received same, Claimant attached a letter to his September 17, 2020 appeal in which he not only contested the denial of his UC benefits, but also referenced receiving "papers in the mail," acknowledged he had been notified of having been "overpaid by $510 [(sic)] and [was being required] to repay it," and argued that he had "never, ever received as much as five cents from [UC]." C.R., Item No. 7.

14

## IV.   Conclusion

For the foregoing reasons, we affirm the December 16, 2020 Orders of the Board dismissing Claimant's appeals as untimely.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William M. Autry, Jr.,                    :
                    Petitioner            :
                                          :
          v.                              :    No.  117 C.D. 2021
                                          :    No.  118 C.D. 2021
Unemployment Compensation Board           :
of Review,                                :
                    Respondent            :

# **O R D E R**

AND NOW, this 22nd day of December 2021, the December 16, 2020 Orders of the Unemployment Compensation Board of Review dismissing the appeals of William M. Autry, Jr., as untimely, are **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge